CAFFERTY CLOBES
MERIWETHER & SPRENGEL LLP
ANTHONY F. FATA (*To Be Admitted Pro Hac Vice*)
DANIEL O. HERRERA (*To Be Admitted Pro Hac Vice*)
30 N. LaSalle Street, Suite 3200
Chicago, Illinois 60602
Tel: (312) 782-4880
Fax: (312) 782-4485
afata@caffertyclobes.com
dherrera@caffertyclobes.com

CHAVEZ & GERTLER LLP
MARK A. CHAVEZ (SBN 90858)
JONATHAN E. GERTLER (SBN 111531)
DAN L. GILDOR (SBN 223027)
42 Miller Avenue
Mill Valley, California 94941
Tel: (415) 381-5599
Fax: (415) 381-5572
mark@chavezgertler.com
jon@chavezgertler.com
dan@chavezgertler.com

Attorneys for Plaintiffs and the Proposed Class

**FILED** 2013 MAY 24 P 3:03
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N. DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SEAN PENNINGTON and MEGHAN WHITE, on behalf of themselves, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>APPLE, INC.<br><br>Defendant. | Case No: C 13 2375 PSG<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE 1750,** *et seq.,* **THE UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200,** *et seq.,* **BREACH OF WARRANTIES, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND UNJUST ENRICHMENT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

ORIGINAL

CLASS ACTION COMPLAINT

Plaintiffs Sean Pennington and Meghan White ("Plaintiffs"), having originally filed their complaint in the Superior Court of the State of California, County of Santa Clara, on January 29, 2010, on behalf of themselves and a proposed class whose members are included in the proposed Class defined herein, complain against Defendant Apple Inc. ("Defendant" or "Apple") as follows:

## INTRODUCTION

1. This is a class action brought against Defendant Apple Inc. ("Apple") to challenge and redress a corporate "bait and switch" policy utilized by Apple to deprive its customers of the benefit of their contractual bargain and to increase its sales. Apple advertises, markets, and sells its iPhone, iPhone 3G, 3GS, and 4 mobile phones, along with the iPod Touch, by representing that the Class Devices are protected by a comprehensive one-year warranty. (As used herein, the term "Class Devices" encompasses both iPhones and the iPod Touch.) Once it induces customers to purchase Class Devices, however, Apple utilizes a pretext to void warranty coverage, thereby accomplishing the switch. Specifically, Apple relies upon inherently inaccurate pieces of white indicator tape located in areas exposed to the outside of the Class Devices (which Apple labels "liquid contact indicators" or "liquid submersion indicators") that change color when they come in contact with water or other liquid to justify voiding the warranty purportedly because the customer has abused the Class Device by either submerging it or spilling liquid on it.

2. The external pieces of indicator tape, which are located at the base of the headphone jack at the top of the Class Device and in the dock-connector housing at the bottom of the Class Device, cannot accurately indicate whether a Class Device has been subject to abuse through submersion or liquid spills because they change color upon contact with normal, minimal and non-consequential moisture or condensing humidity resulting from the normal and expected use of the Class Device, which Apple promotes and markets for a variety of uses, including recreational and outdoor uses. Moreover, the pieces of tape cannot and do not indicate whether the reported malfunction actually resulted from abuse through submersion or liquid spills; they can only indicate that the tape came in contact with moisture or humidity, including an amount as

1
CLASS ACTION COMPLAINT

1 little as a single drop of water that is completely absorbed by the tape and that never intrudes into 2 the interior of the Class Device where it can come in contact with the devices' electronic circuitry.

3     3. Despite these inadequacies, which are known to Apple, Apple has adopted and 4 implemented a uniform policy to deny warranty claims without conducting any actual 5 investigation to determine whether the reported malfunction resulted from submersion or liquid 6 spills other than to look at the color of these pieces of tape. Apple has deemed the color of the 7 tape to be determinative as a matter of policy. Consequently, even though the tape's color falsely 8 indicates abuse through submersion or liquid spill, and even though the tape's color has nothing 9 to do with the operative cause of the reported malfunction, Apple voids the warranty immediately 10 and conducts no investigation to ascertain the actual cause of the malfunction or confirm that the 11 device has been submerged or had liquid spilled on it. Rather, Apple takes advantage of this 12 opportunity to sell customers new or refurbished Class Devices. In this regard, Apple has used 13 and continues to use the color of the indicator tape as a pretext to deny warranty coverage and to 14 charge for repairs or replacement of Class Devices, even when the failure was not caused by 15 abuse through submersion or liquid spills, or is completely unrelated to contact with liquid of any 16 kind.

17     4. As a result of Apple's policy and practice, Class Device owners and users have 18 been and continue to be improperly deprived of the benefits of warranty coverage for defective 19 Class Devices and have been and continue to be forced to purchase refurbished or new Class 20 Devices to replace their defective Class Devices. These individuals have suffered injury in fact 21 and have lost money or property in that they have been deprived of the benefit of their warranty 22 and that they have had to spend and will have to spend money to have their Class Device repaired 23 or to purchase a new Class Device.

24     5. Through this class action, Plaintiffs seek damages, injunctive and declaratory relief 25 to redress and half Apple's unlawful and unfair practice of denying consumers the benefit of their 26 warranty on the basis of the color of the external pieces of indicator tape without investigating 27 further to determine whether the Class Device was abused through submersion or liquid spills that 28 caused the reported malfunction.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this matter under 28 U.S.C. § 1332 because the amount in controversy exceeds $5 million and the proposed class is national in scope.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391 because the acts and practices of Defendant alleged herein occurred in this judicial district.

## PARTIES

8. Plaintiffs Sean Pennington and Meghan White are California citizens who reside in Long Beach, California. Plaintiffs purchased an iPhone 3G in November 2008.

9. Defendant Apple Inc. is a corporation organized and existing under the laws of the State of California and has its principal place of business and worldwide headquarters in Cupertino, California. At all relevant times, Apple was subject to California law. The policies and practices challenged herein were centrally adopted at, and disseminated and overseen from, Apple's worldwide headquarters in Cupertino, California with the intent that the policies and practices apply nationwide.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

10. Apple's iPhone is a portable consumer electronic device. Apple began selling the iPhone in 2007, the iPhone 3G in 2008, the iPhone 3GS in 2009, and the iPhone 4 in 2010. Apple has manufactured, sold, and warranted millions of these iPhones and continues to manufacture, sell, and warrant the iPhone 3G, 3GS and 4. Over time, Apple has sold iPhones at prices ranging from $99 to $499 depending on the features and storage capacity of the specific device.

11. Apple also designs, markets, and sells, the iPod Touch, which is virtually identical to the iPhone in design, manufacture, and features, except that it does not include the iPhone's telephonic capabilities. Apple has sold the iPod Touch at prices ranging from $199 to $399 depending on the device's features and storage capacity.

12. Each Class Device is sold with a one-year express warranty whose value is included in the sales price ("Standard Warranty"). The warranty purportedly covers defects in materials and workmanship under normal use for a period of one year from the date of retail purchase.

13. Apple also offers consumers the opportunity to purchase the "AppleCare Protection Plan" for Class Devices, which Apple markets as providing "comprehensive coverage" under an extended warranty for two years from the date of original purchase ("Extended Warranty"). The Extended Warranty may be purchased for the iPhone for an additional $69.00 and for the iPod touch for an additional $59.00. The terms of the Extended Warranty obligate Apple to repair or replace Class Devices if there is a defect in materials or workmanship during the coverage period.

14. All Class Devices are shipped with two pieces of tape, located on the outside of the Class Device, that are designed to turn pink or red upon contact with liquid. One piece of tape is located at the top of the Class Device at the bottom of the headphone jack. It may be viewed from the outside, without opening the Class Device, simply by looking down into the headphone jack. The headphone jack is not covered, and the piece of tape therein is exposed to the outside and external conditions. The other piece of tape is located at the bottom of the dock-connector housing at the bottom of the Class Device. It too may be viewed directly from the outside of the Class Device without opening the Class Device, simply by looking into the dock-connector housing. The dock-connector housing is not covered, and the piece of tape therein is also exposed to the outside and external conditions.

15. Because the headphone jack and the dock-connector are not covered, and because the pieces of indicator tape therein are not covered, they are susceptible to contact with humidity naturally occurring in a variety of environments (e.g., kitchens, restaurants, bathrooms) as well as humidity and perspiration emanating from the body during physical exercise, whether the user is holding the Class Device in his or her hand or has stored it in his or her pocket, or any stray drop of water or other liquid from any source.

16. Additionally, during phone conversations without the aid of a speaker, headphones, or Bluetooth, the pieces of indicator tape are in close proximity to the ear, hair, and mouth, rendering them highly susceptible to moisture or humidity from the head or mouth.

17. Because of the location of the external pieces of indicator tape on the Class Devices, the tape falsely indicates water intrusion and abuse when, in fact, the Class Device has

4

only been exposed to a very minimal amount of moisture, such as a drop of rainwater, a drop of perspiration, dampness from breathing while using the Class Device, and an almost infinite variety of other inconsequential moisture. On information and belief, thousands of Apple customers have been denied warranty coverage due to inconsequential moisture that has not actually resulted in any abuse, and in instances where the malfunction complained of would logically have nothing to do with abuse through submersion or liquid spills.

18. Throughout the class period, Apple implemented and continues to implement a uniform practice of depriving customers the benefits of the warranty that comes with the Class Devices by denying warranty claims relating to the Class Devices if the pieces of indicator tape located on the outside of the Class Devices have turned pink or red without any investigation to ascertain the actual cause of the malfunction. On information and belief, numerous consumers continue to be denied warranty coverage where the Class Device has never been submerged or subject to a liquid spill.

19. Apple also denies coverage under its AppleCare protection plan, which is sold at an additional price to the consumer, in the same manner as it denies regular warranty services. Apple markets its AppleCare plan as "comprehensive coverage" which provides "peace of mind." Yet, as described above, this additional coverage is voided by false positives irrespective of whether any abuse has actually occurred through submersion or liquid spill.

20. Even though Apple knows that the color of the indicator tape located in the headphone jack and dock-connector housing cannot reliably indicate abuse through submersion or liquid spills (as opposed to ordinary exposure to humidity, precipitation or perspiration), it denies warranty claims on Class Devices solely on the basis of coloration of those pieces of tape without any further investigation to determine whether the Class Device was actually submersed or had liquid spilled on it. In fact, Apple will deny warranty service even for failures that are completely unrelated to any possible abuse through submersion or liquid spills. On information and belief, numerous consumers have been and continue to be denied coverage under the Class Devices' warranties and under the AppleCare protection plan as a result of color changes that falsely

indicate abuse through submersion or liquid spill, even where the malfunction does not logically relate to any such potential abuse.

21. Plaintiffs purchased an iPhone 3G on November 4, 2008 from the AT&T Store located at 4917 E. 2nd Street in Long Beach, California and subsequently activated it for use. Plaintiffs' iPhone was new and was subject to the express warranty.

22. In late July 2009, Plaintiffs' iPhone ceased to work properly after it was used to play a "fishing" game that is available for download and use on the iPhone. The "home button" on the iPhone stopped working. Plaintiff Pennington contacted Apple to troubleshoot the phone and was told to restore the phone after a soft reset did not fix the problem. Plaintiff Pennington attempted to restore the phone back to its original settings but the iPhone's battery died during the process, which caused the iPhone not to power on completely. Then the iPhone ceased powering on completely. On information and belief, a malfunctioning "home button" is a common issue that is not necessarily related to submersion or liquid spills.

23. Plaintiff Pennington contacted Apple's customer service number, and Apple attempted to troubleshoot the problem to no avail. Apple's customer service center directed Plaintiff Pennington to visit an Apple Store.

24. On August 6, 2009, Plaintiff Pennington took the iPhone to the Apple Store located at the South Coast Plaza in Costa Mesa, California.

25. Plaintiff Pennington informed the Apple repair technician ("Genius") that his iPhone was not working properly and requested Apple to repair or replace it pursuant to the warranty. The Genius inspected Plaintiffs' iPhone and subsequently determined that the iPhone had experienced "liquid damage" based solely on the pink color of one of the external pieces of indicator tape, and that consistent with Apple's policy, Apple would not repair or replace Plaintiffs' iPhone pursuant to the warranty even though Plaintiff Pennington informed the Genius that the iPhone had not been submerged in liquid and had not experienced liquid damage but that it had simply stopped functioning properly as a result of the iPhone's normal and intended use.

26. Neither the Genius assisting Plaintiff Pennington nor any other Apple personnel ever conducted any further investigation to determine whether Plaintiffs' iPhone had in fact been

1. abused through submersion or liquid spill. Instead, the Genius offered to sell Plaintiff Pennington a new iPhone for $599.

27. Plaintiff Pennington subsequently spoke to numerous Apple employees, including the Apple Store Manager, a Customer Service Representative named Joshua Rose, Daniel Jasso from Apple's Executive Office for Customer Relations, and Robert Barger, who identified himself as an employee in Apple's Corporate Office. Each confirmed to Plaintiff Pennington that Apple would not repair or replace Plaintiffs' iPhone in accordance with the warranty because the pieces of indicator tape on the outside of the iPhone were pink. Robert Barger also admitted to Plaintiff Pennington that the pieces of indicator tape on the outside of the iPhones may be pink or red in color even if there is no damage to the iPhone.

28. Unable to obtain warranty service for Plaintiffs' defective iPhone, Plaintiffs were forced to purchase a new iPhone in order to access personal and business contact information that had been stored on Plaintiffs' original iPhone that Plaintiffs could not afford to lose. Plaintiffs subsequently purchased a replacement iPhone from the Costa Mesa Apple Store for $99.00.

## CLASS ACTION ALLEGATIONS

29. Plaintiffs bring this action on behalf of themselves and all other similarly-situated persons under Rule 23. Plaintiffs seek to represent a Class defined as follows:

> All United States residents who are or were owners of a Class Device (a) that was tendered to Apple in the United States for repair or replacement during the period on or before December 31, 2009 for any iPhone device and on or before June 30, 2010, for any iPod Touch device; (b) at the time of tender, the Class Device was within either the one-year limited warranty period or, if covered by an AppleCare Protection Plan, the two-year plan coverage period; and (c) repair or replacement of the tendered Class Device was denied by Apple on the basis of Apple's liquid damage policy. The Class excludes counsel for the parties and members of their immediate families; Apple; any entity in which Apple has a controlling interest; Apple's directors, officers, and employees; Apple's legal representatives, successors, and assigns; the presiding Judges in any actions raising the claims alleged herein; and all person who validly request exclusion from the Class.

30. Plaintiffs seek damages and equitable relief, injunctive and declaratory relief on behalf of the Class.

31. Common questions of law and fact exist as to members of the Class that include, but are not limited to, the following:

7
CLASS ACTION COMPLAINT

a. whether the pieces of indicator tape located on the outside of the Class Devices are susceptible to indicating abuse through submersion or liquid spills when no such abuse has actually occurred, or are otherwise unreliable indicators of abuse;

b. whether, as a matter of policy, Apple has deprived consumers of the benefit of their warranty coverage by denying warranty service on defective Class Devices on the basis of false indications of abuse through submersion or liquid spills;

c. whether, as a matter of policy, Apple has deprived consumers of the benefit of their warranty coverage by denying warranty service on defective Class Devices on the basis of abuse through submersion or liquid spills even though the malfunction if unrelated to such abuse;

d. whether Apple has violated the CLRA, Civ. Code §§ 1750 et seq.;

e. whether Apple has engaged in unlawful or unfair business practices in violation of the UCL;

f. whether Plaintiffs and the other Class members are entitled to an order prohibiting Apple from denying express warranty claims solely on the basis of the external pieces of indicator tape;

g. whether Plaintiffs and the other Class members are entitled to an order requiring Apple to revisit the prior denials of warranty service on the basis of a determination that the iPhone was abused through submersion or liquid spills; and

h. whether damages and/or restitution should be awarded to Class Members.

32. Plaintiffs' claims are typical of the claims of the Class that Plaintiffs seek to represent. Plaintiffs and members of the Class purchased and activated Class Devices with the same indicator tape and each has, may have been, or may in the future be, wrongfully denied warranty service solely on the basis of a determination that the Class Device had been abused through submersion or liquid spill pursuant to Apple's uniform policy and practice of denying

8

coverage under the express warranty if the indicator tape has changed color even where no such abuse has actually occurred.

33. The members of the Class are so numerous that joinder of all members would be infeasible and impractical. The disposition of their claims through this class action will benefit both the parties and the Court. The exact number of Class members is unknown to Plaintiffs at this time. The Class is ascertainable.

34. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs are members of the Class and do not have any conflicts of interest with other Class members. Plaintiffs have retained and are represented by competent counsel who are experienced in complex class action litigation, including consumer protection class actions such as the present action.

35. A class action is superior and the appropriate procedure to afford relief for the wrongs alleged herein.

### FIRST CLAIM FOR RELIEF
### (For violations of Consumers Legal Remedies Act, Civil Code § 1750 et seq.)

36. On behalf of themselves and Class members, Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein and further allege as follows:

37. The CLRA was designed and enacted to protect consumers from unfair and deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code section 1770.

38. At all relevant times, Plaintiffs and members of the Class were "consumers" under California Civil Code section 1761, subdivision (d). The transactions from which this cause of action arises are transactions with individuals for personal, family, or household use.

39. At all relevant times, each class device was a "good" under California Civil Code section 1761, subdivision (a).

40. At all relevant times, Apple was a "person" under California Civil Code section 1761, subdivision (c).

41. Pursuant to Civil Code section 1781, Plaintiffs bring this claim on behalf of themselves and all members of the Class as described above.

42. Plaintiffs and the other Class members engaged in "transactions" under California Civil Code section 1761, subdivision (e), including purchasing and activating Class Devices and the presentation of those Class Devices for repair or replacement pursuant to a warranty.

43. Throughout the relevant time period, Apple advertised and made representations that the Class Devices and their component parts were covered under express warranties but failed to disclose and/or concealed that as a matter of policy and practice Apple voids such warranty coverage on the basis of unreliable indications of abuse through submersion or liquid spills, without regard to more reliable evidence of such abuse, and without regard to whether the malfunction complained of may have resulted from such abuse.

44. As alleged above, Apple represented and continues to represent that its goods or services have characteristics, uses, benefits, or quantities which they do not have, in violation of Civil Code section 1770, subdivision (a)(5).

45. As alleged above, Apple represented and continues to represent that its goods or services are of a particular standard, quality, or grade, in violation of Civil Code section 1770, subdivision (a)(7).

46. As alleged above, Apple advertised and continues to advertise goods and services with the intent not to sell them as advertised, in violation of Civil Code section 1770, subdivision (a)(9).

47. As alleged above, Apple represented and continues to represent that a transaction conferred or involved rights, remedies, or obligations which it did not have or involve, in violation of Civil Code section 1770, subdivision (a)(14).

48. As alleged above, Apple represented and continues to represent that the subject of a transaction has been supplied in accordance with previous representations when it has not, in violation of Civil Code section 1770, subdivision (a)(16).

49. As a result of Apple's practices, Plaintiffs and Class members have suffered damages in amounts to be proven at trial.

50. Apple's violations of Civil Code section 1770 present a continuing threat to Plaintiffs and members of the Class in that Apple continues to engage in the above-described unlawful and deceptive practices, and unless enjoined from doing so by this Court, will continue to do so, all to the damage of Plaintiffs and the Class.

51. Plaintiffs sent Apple written notice of its violations of Civil Code section 1770 and thereafter provided Apple with an opportunity to correct or otherwise rectify the problems alleged herein. Apple did not avail itself of that opportunity. Plaintiffs and the Class have been damaged in an amount to be proven at trial.

52. Accordingly, Plaintiffs seek an order awarding actual damages, equitable relief, as well as an award of attorneys' fees and costs pursuant to Civil Code section 1780, subdivisions (a) and (e).

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CLAIM FOR RELIEF
### (For violations of Business and Professions Code Sections 17200 et seq.)

53. On behalf of themselves and Class members, Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein and further allege as follows.

54. Business & Professions Code section 17200, et seq., the "Unfair Competition Law" ("UCL") defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice. This statute authorizes a court to order injunctive and/or declaratory relief and other equitable relief to remedy any violations. Plaintiffs bring this action on behalf of themselves and all members of the Class as described above to remedy the ongoing unlawful and unfair business practices alleged herein, and to seek redress on behalf of themselves and the Class.

55. Beginning on an exact date unknown to Plaintiffs, but at all times relevant herein, Apple has committed acts of unfair competition proscribed by the UCL.

11
CLASS ACTION COMPLAINT

56. The business acts and practices of Apple herein alleged constitute unlawful business practices because the acts and practices violate the Consumers Legal Remedies Act (Civil Code section 1170, subdivisions (a)(5), (a)(7), (a)(9), (a)(14), (a)(16)).

57. Apple has also committed unfair business practices by:

    a. engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiffs and the other Class members;

    b. engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the other Class members; and

    c. engaging in conduct that undermines or violates the stated policies underlying the CLRA, Civ. Code section 1750 et seq., which seeks to protect consumers against unfair business practices and to promote a basic level of honesty and reliability in the marketplace, and thus provide a sufficient predicate for Plaintiffs' claims for unfair business practices.

58. As a direct and proximate result of the acts and practices alleged above, Plaintiffs and Class members have suffered injury in fact and have lost money and property as a result of Apple's unlawful, unfair, or fraudulent practices, in that, among other things:

    a. Class members would not have bought the Class Devices and/or AppleCare coverage at the prices they paid; and/or

    b. Class members have paid for repairs and replacement Class Devices that they would not and should not have paid for.

59. Apple's violations of Business and Professions Code section 17200 present a continuing threat to Plaintiffs and members of the Class in that Apple continues to engage in the above-described unlawful and unfair practices, and unless enjoined from doing so by this Court, will continue to do so, all to the damage of Plaintiffs and the Class. Plaintiffs and the Class are also entitled to restitution in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## THIRD CLAIM FOR RELIEF
### (For Breach of Warranty)

60. On behalf of themselves and Class members, Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein and further allege as follows.

61. Apple's Standard and Extended Warranties state, in relevant part, that they protect Class Devices "against defects in materials and workmanship under normal use." The terms of the Standard and Extended Warranties obligate Apple to "either (1) repair the hardware defect at no charge, using new parts or parts equivalent to new in performance and reliability, (2) exchange the product with a product that is new or equivalent to new in performance and reliability and is at least functionally equivalent to the original product, or (3) refund the purchase price of the product." Apple's Standard Warranty and Extended Warranty are express warranties under California law.

62. The purchase price of a Class Device includes the Standard Warranty described herein, which is part of the basis of the bargain. Apple sells the Extended Warranty for an additional fee.

63. Apple breached and continues to breach its express warranties by engaging in the conduct alleged herein, namely denying warranty coverage on a false pretext that the Class Device has been damaged by liquid spill or submersion.

64. Plaintiffs and Class Members have been and continue to be damaged by Apple's breach of its express warranties because Plaintiffs and Class Members have lost of the use of their Class Devices, have paid for repairs or have spent money to buy replacement Class Devices because of defects that should have been covered by Apple. Furthermore, as a result of Apple's breach of its express warranties, Plaintiffs and Class Members have suffered damages in an amount to be determined at trial.

65. Plaintiffs and the other Class Members are therefore entitled to legal and equitable relief against Apple, including damages, specific performance, rescission, restitution, attorneys' fees, costs of suit, and other relief, as appropriate.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## FOURTH CLAIM FOR RELIEF
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

66. On behalf of themselves and Class members, Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein and further allege as follows.

67. Plaintiffs and Class Members entered into an agreement to purchase Class Devices or were otherwise under contractual privity with Apple as a result of the express warranties described herein.

68. The Standard Warranty and Extended Warranty contracts are subject to the implied covenant that Apple would conduct business with Plaintiff and Class Members in good faith and would deal fairly with Plaintiffs and Class Members.

69. Apple breached that implied covenant by abusing its discretion in the performance of the warranty contracts or by intentionally subjecting Plaintiffs and Class Members to a risk beyond which they would not have reasonably contemplated at the time of purchase, namely that their warranties would be voided on the basis of the color of pieces of tape.

70. Apple also breached the implied covenant of good faith and fair dealing by not placing terms in the contracts and/or warranties that conspicuously stated to Plaintiffs and Class Members that warranty coverage would be denied solely on the basis of the color of pieces of indicator tape regardless of whether the Class Devices had actually been damaged by submersion or liquid spill.

71. As a direct and proximate result of Apple's breach of its implied covenants of good faith and fair dealing, Plaintiffs and Class Members have been damaged in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment)

72. On behalf of themselves and Class members, Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein and further allege as follows.

73. By engaging in the conduct described in this Complaint, Apple has been unjustly enriched by, inter alia, (a) its sale of Class Devices at inflated prices due to the ostensible

14
CLASS ACTION COMPLAINT

inclusion of a one-year Standard Warranty, (b) the sale of Extended Warranties; (c) avoiding the costs associated with complying with the Class Device's Standard and Extended Warranties; (d) charging consumers to repair Class Devices while those devices were covered by Standard and/or Extended Warranties; (e) selling consumers replacement Class Devices while those devices were covered by Standard and Extended Warranties and (f) requiring consumers to "trade in" their Class Devices without providing them with any compensation for it.

74. As a proximate result of Apple's conduct, Apple obtained secret profits by which it became unjustly enriched at Plaintiffs' and the Class Members' expense. Under the circumstances alleged herein, it would be unfair for Apple to retain the profits it has unjustly obtained at the expense of Plaintiffs' and the Class.

75. Plaintiffs accordingly seek an order establishing Apple as a constructive trustee of the profits that served to unjustly enrich Apple, together with interest during the period in which Apple has retained such funds, and requiring Apple to disgorge those funds to Plaintiffs and members of the proposed class in a manner to be determined by the Court.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SIXTH CLAIM FOR RELIEF
### (For Declaratory Relief)

76. On behalf of themselves and Class members, Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein and further allege as follows:

77. An actual controversy, over which this Court has jurisdiction, has arisen between Plaintiffs and members of the Class on the one hand, and Apple on the other, concerning their respective rights, duties and obligations under the law.

78. Plaintiffs contend that Apple's express warranties promise to repair or replace Apple Class Devices, so long as the Class Device has been abused through submersion or liquid spills or some other warranty-voiding event. Plaintiffs further contend that Apple improperly voids the express warranty upon false indications of abuse through submersion or liquid spills

while knowing that the improperly protected pieces of indicator tape are not reliable indicators of such abuse. On information and belief, Apple disputes each of Plaintiffs' contentions.

79. Plaintiffs desire a judicial determination and declaration of the parties' respective rights, duties and obligations under Apple's express warranties, and specifically that (a) the pieces of indicator tape located on the outside of the Class Device are not reliable indicators of abuse; (b) that Apple's reliance on the pieces of indicator tape is a pretext to denying warranty coverage; and (c) that Plaintiffs and the Class are entitled to coverage of the repair and replacement of their Class Devices and any of its component parts under the express warranties even if the indicator tape mounted on the outside of the Class Device has changed color unless from reliable evidence Apple can establish that in fact the malfunction of which the consumer complains resulted from abuse.

80. A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiffs and each Class member may ascertain their rights and duties under Apple's express warranties.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request of this Court the following relief, on behalf of themselves and Class members:

1. For an order certifying this action as a class action, as alleged herein, and appointing Plaintiffs as class representatives, and Plaintiffs' counsel as Class Counsel;
2. For injunctive relief as pled or as the Court may deem proper;
3. For declaratory relief as pled or as the Court may deem proper;
4. For specific performance under the warranties and/or AppleCare program;
5. For an order awarding monetary damages, commensurate with proof at trial;
6. For an order awarding restitution;
7. For attorneys' fees and costs of suit, including expert-witness fees; and

8. For such other relief as the Court may deem proper.

Dated: May 24, 2013

CAFFERTY CLOBES
MERIWETHER & SPRENGEL LLP

CHAVEZ & GERTLER LLP

By: _____
Mark A. Chavez
Counsel for Plaintiffs SEAN PENNINGTON,
MEGHAN WHITE and the Proposed Class

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class demand a jury trial on claims for relief so triable.

Dated: May 24, 2013

CAFFERTY CLOBES
MERIWETHER & SPRENGEL LLP

CHAVEZ & GERTLER LLP

By: _____
Mark A. Chavez
Counsel for Plaintiffs SEANPENNINGTON,
MEGHAN WHITE and the Proposed Class